UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TIMMY J. LURZ, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3396 |
| | ) | |
| MICHELLE R.B. SADDLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Eleven plaintiffs pursue, pro se, systemic challenges to the conditions at Rushville Treatment and Detention Center ("Rushville"). Their first Complaint was dismissed for failure to state a claim. In response to that order, they filed an Amended Complaint (d/e 15), an "Addendum" (d/e 16), and a "Second Addendum" (d/e 19), all of which the Court will consider in ruling on their petitions to proceed in forma pauperis.

Plaintiffs first assail the "lack of clearly defined and articulated

1

rules/regulations" at Rushville. (Am. Compl., p. 10.) They give as an example an alleged unsubstantiated disciplinary report issued against Plaintiff Webb for unauthorized movement which resulted in a "warning" to Webb. As another example, Plaintiff Bauer was allegedly issued an unsubstantiated report for removing his name from his door, but he was ultimately found not guilty. Plaintiffs assert that these unsubstantiated accusations detrimentally affect their evaluations in state court challenges to their detention.

The Court sees no viable constitutional claim based on these allegations. Procedural due process rights are not triggered unless the deprivation suffered amounts to an "atypical and significant deprivation" in light of the typical deprivations experienced by someone in Plaintiffs' position. Thielman v. Leean, 282 F.3d 478, 484 (7th Cir. 2002). A "warning" and an unsubstantiated accusation which resulted in no discipline are not "atypical and significant deprivations." *See, e.g.,* Miller v. Dobier, 634 F.3d 412, 415 (7th Cir. 2011)(no liberty interest implicated in resident's status demotion from "intermediate" to "close"

2

because "the additional restrictions are too limited to amount to a deprivation of constitutional liberty"). The allegations in Plaintiff's Second Addendum also fail to identify any constitutional deprivation suffered. (Sec. Addendum to Am. Compl., d/e 19, pp. 5-6.)

Further, the possibility that unsubstantiated disciplinary reports might affect Plaintiffs' state court proceedings is too attenuated to make out a claim under 42 U.S.C. § 1983. *See* Sandin v. Conner, 515 U.S. 472, 486 (1995)(allegedly false misconduct record did not inevitably affect the duration of an inmate's sentence--"chance that a finding of misconduct will alter the balance [of parole release decisions] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause").

Plaintiffs' allegation about the alleged lack of notice of the rules is too vague to infer a plausible claim. No inference arises that any constitutionally protected conduct is prohibited by any rule. Plaintiff's primary contention seems to be not with the rules themselves, but with the alleged arbitrary and irrational application of the rules, which does

3

not state a constitutional claim absent an atypical and significant deprivation.

Plaintiffs next allege a lack of educational programs that they assert are essential to secure their release. They seek a testing of all residents to identify those who are performing below a sixth grade level, and ask for a teacher certified to teach K-12 levels as well as special education students. As stated in the Court's prior order, Plaintiffs do not have a constitutionally-protected interest in educational advancement in and of itself. (Ct. 12/14/11 Order, pp. 5-6.) Rushville is not constitutionally required to provide the same educational opportunities that Plaintiffs assert are available in the Illinois Department of Corrections.

Further, no plausible inference arises that Plaintiffs' educational advancement is a requirement of their treatment progress. Plaintiffs do allege that residents who are unable to read and write are unable to progress in treatment. However, this problem only applies to Plaintiff Lurz, who allegedly "possesses a very limited reading and writing ability." (Am. Compl., p. 2.) Lurz might be able to state a claim if he asked to

participate in treatment but was denied because of his disabilities (learning or otherwise), or was unable to progress in treatment because of those disabilities. Yet, that claim would belong to Lurz individually, not to the rest of the Plaintiffs.

Plaintiffs next challenge the use of the black box during court writs, asking the Court to order Defendants to "implement a system which utlize [sic] the exercise of professional judgment in the use and employment of the black box restraint." (Am. Compl., p. 15.) As the Court stated in its prior order, the "black box," by itself, does not amount to a constitutional deprivation. (Ct. 12/14/11 Order, d/e 14, p. 14)(*citing* Miller v. Dobier, 634 F.3d 412, 414-15 (7th Cir. 2011)(no constitutionally protected liberty interest in avoiding the "black box" restraints); Thielman, 282 F.3d at 483-84 (7th Cir. 2002)(addition of waist belt and leg chains to handcuffs during transport of detained person did not implicate Constitution)).

Plaintiffs allege that they have endured swelling, bruising, and cuts from the black box, and that Plaintiff Webb fell while wearing the black

5

box on some unidentified date, sustaining serious injuries. The incorrect application of the black box to a resident, if done intentionally to cause significant pain, would arise to a constitutional claim, just as applying regular handcuffs in such a manner would state a claim. However, the claim would arise only to the resident harmed from the incident. No plausible inference arises of a systemic constitutional problem that affects all Plaintiffs with regard to application of the black box.

Plaintiffs next allege that "they have been forced to have bowel movement[s] in their clothing and urinate in their clothing do [sic] to the Defendants [sic] policy for not stopping" during writs. (Am. Compl., p. 14). They further allege that they have appeared in open court in soiled clothing as a result, which they believe is done to embarrass and humiliate them.

The Court has already held that "refusing Plaintiffs the use of a public restroom during transport would not, *per se*, violate the Constitution . . . ." (Ct. 12/14/11 Order, d/e 14, p. 6). Requiring the use of a urinal jar during transport does not, by itself, amount to a

constitutional deprivation. The Court cannot "direct[] the Defendants [to stop] . . .using or forcing the use of urinal jars during court writs" as Plaintiffs request. (Am. Compl., p. 17).

Forcing a resident to use a urinal jar could state a constitutional claim depending on the circumstances, such as the resident's ability to use a bathroom before and after the transport, medical conditions of the resident, the length of the transport, and whether the jar was used in an intentionally humiliating and embarrassing manner or in as discrete a manner as possible. Similarly, forcing a resident to soil himself and parading him about in court in soiled clothes would certainly state a constitutional claim, but what Plaintiffs seek is a total ban on the use of urinal jars. In short, whether a constitutional claim arises from a resident's inability to use a bathroom during a transport would depend on the specific circumstances of the situation. Such a claim would not proceed as a systemic challenge, but rather as an individual claim.

Also as stated in the Court's prior order, Plaintiffs state no equal protection claim for the alleged differences in treatment between them

and residents in a State mental health institution:

> Plaintiffs are not similarly situated to persons confined for treatment in other state mental health facilities. Plaintiffs are in Rushville because they have been "convicted of a sexually violent offense, . . .[and are] dangerous because [they] . . . suffer[] from a mental disorder that makes it substantially probable that . . . [they] will engage in acts of sexual violence." 725 ILCS 207/5(f). Persons confined in other state mental health facilities may also be dangerous to themselves or others, but they do not fit the statutory definition for sexually violent persons. If they did, they would be in Rushville. *See* Thielman v. Leean, 282 F.3d 478, 483 (7th Cir. 2002)("facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high."). In short, there is no equal protection claim because Plaintiffs are not similarly situated to mentally ill persons held in other mental facilities. *See* Thielman, 282 F.3d at 485 (uphholding restraints used on sexually violent persons during transport and not on other mentally ill patients: "[I]t is not unreasonable for the State to believe that a person with a mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who nonetheless threatens danger to himself or others.").

(Ct. 12/14/11 Order, d/e 14, pp. 7-8).

Plaintiffs assert in their Second Addendum that other States afford sexually violent detainees more freedom of movement within the facility, as well as more amenities, including "large carpeted dayrooms with

8

couches and large screen TVs as well as a music room," greater opportunities for legal research and practicing religion, and an hourly wage for job performance.

Plaintiffs are constitutionally entitled to humane treatment and to the exercise of professional judgment, not to the "least restrictive" environment. See Thielman v. Leean, 282 F.3d at 482 (even if State statute required least restrictive means in transporting sexually violent detainee, statute created no constitutionally protected liberty interest). No plausible inference arises that the conditions at Rushville violate constitutional standards or that the failure to provide the same amenities at other facilities marks a "substantial departure from accepted professional judgment." Youngberg v. Romeo, 457 U.S. 307, 320 (1982). As for an equal protection claim, Plaintiffs are not similarly situated to civil detainees in other States by the simple fact that those facilities are run by States other than Illinois.

Plaintiffs also challenge the smoking ban, arguing that the Facility is a "long term care" facility exempt from the state law. However, even if

Plaintiffs' interpretation of state law is correct, a smoking ban does not violate the Constitution. Plaintiffs have no constitutional right to smoke. Beauchamp v. Sullivan, 21 F.3d 789, 790 (7th Cir. 1994)("with the Supreme Court having just held that prison officials may have a constitutional duty to protect inmates from high levels of ambient cigarette smoke, . . ., a prison could hardly be thought to be violating the Constitution by restricting smoking . . . .").

Moving on, in their Second Addendum Plaintiffs allege that Defendants' application of the rules and policies is "inflexible" and that Defendants have a confrontational manner, which cuts against the recommendation of experts who allegedly advise a more flexible and lenient approach. These allegations are too vague and broad to plausibly infer a systemic claim that Defendants have failed to exercise professional judgment in treatment decisions.

Similarly, Plaintiff's allegations in their First Addendum of a "prison like" environment do not state a constitutional claim. The restrictions they challenge—limits on personal property, searches,

progressive discipline for breaking rules—are decisions committed to the discretion of the Rushville administrators and supported by legitimate concerns in security and rehabilitation. *See* Thielman, 282 F.3d at 483 (7th Cir. 2002)("facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high.").

IT IS THEREFORE ORDERED:

1) Plaintiffs' motion to have the Court consider their Second Addendum is granted (d/e 19). Their request to add Samuel Rutherford as a Plaintiff is denied because Mr. Rutherford has not signed the pleadings.

2) Plaintiffs' petitions to proceed in forma pauperis are denied (d/e's 3-12) because Plaintiffs fail to state federal claims based on alleged systemic constitutional violations at Rushville. To the extent Plaintiffs pursue individual claims based on specific incidents, those claims are dismissed without prejudice to refiling a separate lawsuit by the individual Plaintiff who suffered the alleged constitutional deprivation.

11

3) All pending motions are denied as moot (d/e 20), and this case is closed. The clerk is directed to enter judgment in favor of Defendants and against Plaintiffs on Plaintiffs' systemic constitutional challenges.

4) If Plaintiffs wish to appeal this dismissal, they must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal in forma pauperis should set forth the issues Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

ENTERED: July 26, 2012

FOR THE COURT:

                                              s/Sue E. Myerscough
                                              SUE E. MYERSCOUGH
                                      UNITED STATES DISTRICT JUDGE